IN THE MATTER OF THE PARENTAL RIGHTS OF
CHANNING CARSON, A MINOR.

ALEXANDER F. CARSON, FATHER OF THE MINOR
CHILD, CHANNING CARSON, APPELLANT, v.
CAROL CHANNING CARSON LOWE, MOTHER
OF SAID MINOR CHILD, RESPONDENT.

No. 4296

December 9, 1960 357 P.2d 591

(Petition for rehearing denied January 16, 1961.)

*Jones, Wiener & Jones,* of Las Vegas, and *William B. Murrish,* of Hollywood, for Appellant.

*Goldwater & Singleton* and *McNamee & McNamee,* of Las Vegas, for Respondent.

**OPINION**

By the Court, BADT, J.:

On this appeal we affirm the judgment of the district court terminating the parental rights of Alexander F. Carson as to Channing Carson, a minor, "including any right of custody, partially or wholly, of said child."

The minor, Channing Carson, was the issue of the marriage of Alexander F. Carson, appellant, and Carol Channing Carson Lowe, respondent. The father and mother separated in March 1956 and were divorced in September 1956. The decree granted the mother the care, custody, and control of the minor child, then three years old, but without provision for the child's support by the father. Immediately following the entry of the divorce decree in September 1956 the mother married Charles Lowe, and the minor has been continuously in the custody of Mr. and Mrs. Lowe from September 1956 to July 1959 when the petition in this proceeding was filed and to the present time. The child is now six or seven years old.

The court made formal findings, finding to be true the allegations of the petition that since 1956 appellant had failed and refused to support the minor child though able to do so; that the mother, since the birth of said child, and with Charles Lowe, her present husband, had since September 5, 1956 supported the said child entirely; that the child had been abandoned by its father; and that the defendant's denials were untrue.

The proceedings culminating in the judgment terminating parental rights were had under the provisions of Chapter 128 NRS. Subdivision 2 of NRS 128.010 contains the following definitions:

"2. 'Abandonment of child' imports any conduct of one or both parents of a child which evinces a settled purpose on the part of one or both parents to forego all parental custody and relinquish all claims to the child, and a parent or parents of a child who shall leave the child in the care and custody of another without provision for his support and without communication for a period of 1 year shall be presumed to have intended to abandon the child."

Appellant's opening brief specified as assignments of error (1) the finding "that the conduct of the appellant evidenced a settled purpose on his part to forego all parental custody and relinquish all claims to the child"; and (2) the finding that appellant "had left the child in the care and custody of another without provision for his support and without communication for a period of one year." There are two additional assignments of error which will be treated later, but the two assignments quoted are the ones with which we are primarily concerned. The opening brief discusses at length the evidence to support appellant's contention that such evidence does not support the findings. However, in reply to the respondent's answering brief which in turn discusses at length the evidence under respondent's contention that such evidence amply supported the findings, appellant insists that respondent "misses the issue on appeal," as there is no fact question involved but a question of law, namely, that of the construction of the statute. We refrain from discussing appellant's change in the point of his attack on the judgment. We reject, however, appellant's contention that the question involved is one of law. It is true that in one case cited by appellant, Glendinning v. McComas, 188 Ga. 345, 3 S.E.2d 562, 563, the court reversed a judgment overruling a petition to the demurrer under the theory that the statute "must be construed strictly," and that under such

strict construction the complaint had failed to show the child's need. It appears however, that the courts are in virtually unanimous agreement to the effect that the question is one of fact as to whether the evidence establishes abandonment under the statute. Jones v. Thompson, 151 Me. 462, 121 A.2d 366; In Re Potter, 85 Wash. 617, 149 P. 23; Winans v. Luppie, 47 N.J.Eq. 302, 20 A. 969; In Re Bistany, 204 N.Y.S. 599, 600, 209 App.Div. 286.

A review of the evidence shows that for the period of three or four years, from 1956 to 1959, any communication or attempts at communication on the part of appellant were most meager. The trial court apparently rejected, as any showing constituting a real attempt to get in touch, a single letter and a single telephone call in January of 1957, as well as a trip in June 1957 which appellant made to California from his residence in Florida. From then until June of 1959 nothing substantial is presented in the way of any attempt to communicate or to get in touch with his child. The court apparently likewise rejected his contention of his contribution to the child's support by way of his interest in an asserted fund of $150,000 which he claimed to be community property, in which he had a one-half interest, and which fund existed at the time of the separation. The evidence was conflicting as to the existence of any such fund, it being asserted by respondent that at the time of the divorce she was virtually insolvent. Even during the marriage any earnings contributed to the community property by the husband were nominal. Although appellant's earnings in 1957 amounted to $6,000 and in 1958 to $5,000 and in 1959 to $3,500 to the date of the trial, he contributed nothing to the child's support and his gifts to the child were limited to those made on the child's birthday and on Christmas. He made no real attempt to insist upon or to enforce his rights of visitation under the divorce decree. It is true that he sought to prove that his attempts to communicate with his infant son were frustrated by respondent and by her attorney and by her accountant, and we are urged to accept this proof.

This, of course, we cannot do in view of the court's findings. More light on such findings appears from the court's written opinion and decision in the case. The learned trial judge said: "* * * [T]he father here left the child with the mother for a long period of time without making any real effort to get a share of custody of the child or even a determination of definite periods of visitation. It would certainly seem that if a father were as concerned and filled with love for his child as the father here professed to be, the space of distance would certainly not prove to be a substantial obstacle, particularly since he was unhampered with a subsequent marriage or any other responsibilities. * * * [T]he father was well aware that a divorce and custody decree existed in the State of Nevada. He consulted an attorney, or attorneys, on the other matters. He certainly could have learned that a resort to the Nevada court on a motion to modify or construe the custody provisions of the Nevada decree would have brought the petitioner and her husband * * * before this court much sooner than the particular action now pending. The father at no time initiated an effort to determine custody and support. * * * As to the father's claim that he had provided some support for the child through a tax condition, this most certainly does not ring with sincerity. Demands were made by the mother's representatives for contribution to the support of the child, and the tax situation was his only response." In considering the best interests of the child the trial judge said: "The differences in environment and miles would result in a gross injustice in itself to the child, who at this very tender stage does not even know what his real father looks like. He probably doesn't even realize that the present husband of Mrs. Channing is not his father. This could only cause consternation and general disruptment in the mind of a boy of these years. It would just naturally follow that the boy would have to be pulled out of one environment, in which he was reared, and suddenly, at least once during each year, placed in another environment with different associations at great distances away from his

mother, which would add to the confusion being multiplied in the child's mind."

In this the court apparently had in mind the provisions of NRS 128.090, which required that the court "shall give full and careful consideration of all of the evidence presented, with due regard to the rights and claims of the parent or parents of such person and to any and all ties of blood or affection, but with a dominant purpose of serving the best interests of such minor person."

In finding that the evidence supported the statutory requirements for abandonment, the court found such abandonment both under the conduct of the father evincing a settled purpose on his part to forego all parental custody and relinquish all claims to the child and, secondly, under the statutory presumption of abandonment on the part of a parent who leaves the child in the care and custody of another without provision for his support and without communication for a period of one year. It is our holding that there is ample support in the record for the finding of abandonment under both of these provisions.

A third assignment of error is the court's finding that appellant was an unfit person. We need not be concerned with this assignment of error, as, regardless of his fitness or unfitness in other respects, the judgment terminating his parental rights must be affirmed by reason of the finding of abandonment.

Finally, appellant asserts that the court's construction of the statute is in violation of the due process clauses of the state and federal constitutions. We find no merit in this assignment.

The court is aware of the seriousness and of the terrible finality of a decree terminating parental rights. Undoubtedly such remedy should be applied with caution. But that this court should, from the cold record, attempt to substitute its judgment for that of the trial court which had all parties before it, observed their demeanor

and weighed their credibility, especially in an area of such sensitivity, will not be attempted.

Affirmed.

PIKE, J., and HANNA, District Judge, concur.

McNAMEE, C. J., being disqualified, the Governor assigned Honorable Richard R. Hanna, District Judge of the First Judicial District, to sit in his place.