JEAN ANN KOBINSKI, AKA PRUDHOMME, APPELLANT, *v.* THE STATE OF NEVADA, WELFARE DIVISION, RESPONDENT.

No. 16732

June 25, 1987                                    738 P.2d 895

*John G. Watkins,* Las Vegas, for Appellant.

*Brian McKay,* Attorney General, Carson City, and *Daniel D. Hollingsworth,* Deputy Attorney General, Las Vegas, for Respondent.

294

## OPINION

*Per Curiam:*

Appellant Jean Ann Kobinski (Jean Ann)[1] appeals from an order terminating her parental rights to her three children: Tina, Fawn and Timothy. Because ample evidence supported the district court's decision, we affirm.

The evidence below showed that Jean Ann, with her then-husband Dale Prudhomme and the children, came to Nevada in September, 1982. Authorities in Minnesota had worked with the family for some time due to allegations of abuse and evidence of parental inadequacy. Jean Ann had a drinking problem, and in

---

[1]Jean Ann was formerly married to Dale Prudhomme, and is now married to Joe Dziubak. The resulting changes of name are not material to this appeal.

fact young Timothy suffered multiple physical, mental and emotional problems characteristic of fetal alcohol syndrome. Upon arriving in Las Vegas, Jean Ann left the children (the youngest still a baby) unattended in an automobile for some one and one-half to two hours, ostensibly to make a telephone call and use a rest room. The children apparently had not bathed recently, and the oldest had lice. Authorities were notified and the children were taken into temporary protective custody.

The children were to be returned when Jean Ann and her husband could provide them an adequate residence with food, clothing and bedding. Despite the assistance of the Welfare Division,[2] Jean Ann never met those minimal requirements. Rather, she moved into a camping trailer on a used car lot, without water, sanitary facilities, electricity, refrigeration or heat. When informed that the trailer was unsuitable she first disputed that determination, then purported to move to a rented home. There was evidence, however, that no change of residence actually took place, and in any event the home had no bedding and was furnished with food only after repeated reminders.

Thereafter, Tina told state personnel that her mother had been gone for two weeks, that the children were still in the trailer, that she and her sister shared a single blanket, and that Fawn and Timothy were sick and vomiting. Upon investigation, the children were found in the trailer, dirty and malodorous, with matted, linty hair, mucus-encrusted faces, and dirty clothing, and eventually were made wards of the state. A number of conditions were imposed for release of the children to Jean Ann's custody. Child support was required, but not a penny was ever paid. Marital and family counseling were required but rejected. Jean Ann was again required to provide a home with food and clothing; none was provided. She was told to complete parent effectiveness training, but was unable to achieve a passing score despite special assistance. There was testimony that Jean Ann was intellectually unable to benefit from the training, was unable to parent, and had not improved significantly during a total of ten years of frequent state intervention. During nearly two and one-half years, she visited her children only eleven of fifty-eight possible times,[3] and sent money only once.[4]

---

[2]Jean Ann disputes the adequacy of that assistance. The evidence was in conflict, however, and the trial court apparently chose to believe the State's witnesses.

[3]Jean Ann claims her visitation rights were restricted. However, there was evidence to the contrary and it does not appear that she took steps at any time to have the alleged restrictions eased or removed.

[4]She also brought clothing on one occasion, but the items were dirty and did not fit.

On her own behalf, Jean Ann presented evidence that she had returned to Minnesota, had found employment and a fiancee, had conquered her drinking problem, and was keeping a clean home and caring for her fiancee's children.[5] Tina, the oldest child, said she would like to be reunited with her mother and siblings. However, she also stated that she would like to be adopted by her foster family, and two witnesses testified that termination of parental rights was in the children's best interest. Adoptive placements were available for all the children. The court ruled against Jean Ann, and she appeals.

Termination of parental rights is a most serious matter, and is scrutinized closely on appeal. However, an order will be upheld if it is supported by substantial evidence, Pyborn v. Quathamer, 96 Nev. 145, 605 P.2d 1147 (1980), and this court will not substitute its judgment for that of the judge who heard the witnesses and observed their demeanor, Carson v. Lowe, 76 Nev. 446, 451-52, 357 P.2d 591, 594 (1960). We conclude that the trial court did not err in determining that the State presented clear and convincing evidence of both jurisdictional and dispositional grounds for termination of parental rights, as required under Champagne v. Welfare Division, 100 Nev. 640, 646-47, 691 P.2d 849, 854 (1984); Cloninger v. Russell, 98 Nev. 597, 655 P.2d 528 (1982); and NRS 128.090(2).

According to *Pyborn,* a finding of abandonment is sufficient in itself to afford jurisdictional grounds. 96 Nev. at 146, 605 P.2d at 1148. The facts of this case justified the trial court's finding of abandonment. *Cf.* Sernaker v. Ehrlich, 86 Nev. 277, 468 P.2d 5 (1970); *Pyborn,* 96 Nev. at 147, 605 P.2d at 1148. The court likewise did not err in finding neglect, parental unfitness, and "token efforts" to remedy Jean Ann's parental shortcomings. *Cf.* Spencer v. Nevada State Welfare Div., 94 Nev. 627, 584 P.2d 669 (1978). Likewise, the court was justified in finding failure of parental adjustment, a jurisdictional ground recognized in *Champagne,* 100 Nev. at 649, 691 P.2d at 855. Although authorities in two states had been involved with Jean Ann for nearly a decade and the children had been in state custody almost continuously for more than two years, at the time of the termination hearing Jean Ann never had complied with reasonable requirements for their return. Children's needs cannot be postponed forever; the trial court ably noted that, although Jean Ann was trying to improve and probably could change, after such long neglect he could not take the chance of leaving her parental rights intact. Thus, juris-

---

[5]The fiancee, who wanted to adopt the children, was unemployed and living on government benefits.

dictional grounds were present.[6] There was also ample evidence that the action taken was in the children's best interest; accordingly, we are constrained to affirm the lower court's order.

Nevertheless, this case presents certain concerns which merit further discussion. First, counsel for the Welfare Division prepared a number of clearly unsupported factual findings, and the trial court accepted them despite their lack of evidentiary support. The findings falsely portrayed more abhorrent parental neglect and unfitness than the evidence at trial established, and we cannot perceive the slightest justification for the inaccuracies.[7]

Nevertheless, the evidence was more than sufficient to justify termination of parental rights without reference to the erroneous findings. Thus, reversal would be inappropriate. We were also greatly disturbed to learn during oral argument that the children were all adopted during the pendency of this appeal. Such a course seems very ill advised. Any termination of parental rights is subject to careful scrutiny on appeal, and reversal is always a possibility. Although our statutes do not expressly preclude the finalization of an adoption under these circumstances, the possibility of future trauma to the child implicates public policy and justifies refusal to enter an adoption decree under NRS 127.150. The pendency of such an appeal is a matter which the State hereafter must disclose plainly, *sua sponte,* to the prospective

---

[6]The court may have erred in finding that the children would be at risk of serious physical and emotional injury if they were returned to Jean Ann's home. However, invalidation of only one jurisdictional ground does not invalidate the decree. Carson v. Lowe, 76 Nev. at 451, 357 P.2d at 594.

[7]The erroneous findings included the following:

1. That Minnesota authorities became involved because Tina had bruises on her buttocks and had been given only crackers to eat (this was not admitted for its truthfulness, but only to show that there had been such a report and that the report prompted investigative action);
2. That Jean Ann burned Tina's face with a cigarette (neglecting to add that the evidence was uncontroverted that the burn was accidental);
3. That the children's home was filled with the stench of urine and feces from filthy diapers scattered everywhere (no such evidence is of record);
4. That Fawn and Timothy became sick from drinking unrefrigerated milk (Timothy was the only child tentatively given such a diagnosis, and spoiled milk was listed as only one possible cause);
5. That the children's faces were covered with fecal matter (no such evidence is of record); and
6. That Jean Ann had a value system in which wrong was right (testimony to that effect was not admitted).

adoptive parents and to any court conducting adoption proceedings. We refuse to require the natural parent to seek a stay of adoption proceedings as a prerequisite to consideration of the fact that an appeal has been taken from an order terminating parental rights.

In short, it appears that this case was not treated in some respects as the very serious matter that it was. However, on the specific facts here present, the defects do not warrant reversal. Therefore, we affirm the order terminating Jean Ann's parental rights.

GUNDERSON, C. J. and STEFFEN, YOUNG, and MOWBRAY, J.J., concur.