**In Re CHRISTINA H. and Alfred H., Jr.**

Supreme Judicial Court of Maine.

Argued Sept. 29, 1992.
Decided Dec. 30, 1992.

Bruce C. Mallonee (orally), Rudman & Winchell, Bangor, for Mother.

Peter M. McGee (orally), Portland, for Father.

Anita M. St. Onge (orally), Jeanette Hagen, Asst. Attys. Gen., Dept. of Human Services, Augusta, for appellee.

John H. Richards, Bangor, Guardian Ad Litem.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD and COLLINS, JJ.

GLASSMAN, Justice.

The parents of Christina H., born December 2, 1984, and Alfred H., Jr., born March 25, 1986, separately appeal from the judgment of the District Court (Bangor, *Mead, J.*) terminating their parental rights to their children. 22 M.R.S.A. § 4055 (1992).[1] The father contends that because of the insufficient reunification efforts of the Department of Human Services (DHS), the court erred in determining that he was unable to protect the children from jeopardy or take responsibility for the children. Both parents contend that the court erred in its determination that the termination of their parental rights is in the best interests of the children. Specifically, the mother bases her contention on the lack of evidence that her relationship with the children is harmful to them. We find no clear error in the court's determinations, and we affirm the judgment.

The record reflects that on February 10, 1987, while the father was serving a prison term, the mother voluntarily placed Christina and Alfred in the care of the DHS where the children have remained. On November 9, 1987, by agreement of all the parties, the court, *inter alia*, ordered that the children be placed in the permanent custody of the DHS, made provision for the mother's visitation with the children and ordered the DHS to allow the father reasonable contact with the children, given his then incarceration in a federal facility in the state of New York. On January 25, 1989, after a hearing on a motion to review the child protective order, the court, with the consent of all the parties, ordered that the custody of the children remain with the DHS and that the DHS would have no continuing reunification obligations with respect to either parent. The court noted, however, that the cease reunification order as to the father was entered only due to his continued incarceration. On August 7, 1990, the father was released from federal prison to a halfway house located in Portland. He was released from the halfway house on October 8, 1990.

At the November 26, 1990 hearing on a motion to again review the child protective order, the parties agreed that the children were still in need of a protection order and that the DHS had made reasonable reunification efforts. Following this hearing, by its order dated December 14, 1990, the court found by a preponderance of the evidence that the DHS had made all reasonable efforts to rehabilitate and reunify the family and ordered that the custody of the children remain with the DHS. The order also provided for the psychological evaluation of the parents, a home study of both parents and continued visits by each of the parents with the children. Following the November 25, 1991 and January 22, 1992 hearings, on the DHS's petition for the termination of parental rights, the court issued its judgment terminating the parental rights to the children from which parents appeal.

The law is well established that the District Court's decision to terminate parental rights must be supported by clear and convincing evidence. We will affirm that decision if our review of the record discloses that the court could reasonably have been persuaded that the required factual findings were proved to be highly probable, and we will vacate the decision only if the findings amount to clear error. *In re Annette P.*, 589 A.2d 924, 926 (Me. 1991).

---

1. 22 M.R.S.A. § 4055(1)(B)(2) provides in applicable part that the court may order termination of parental rights if based on clear and convincing evidence it finds that:

    (a) Termination is in the best interest of the child; and

    (b) Either:

    (i) The parent is unwilling or unable to protect the child from jeopardy and these circumstances are unlikely to change within a time which is reasonably calculated to meet the child's needs;

    (ii) The parent has been unwilling or unable to take responsibility for the child within a time which is reasonably calculated to meet the child's needs;

    . . . .

    (iv) The parent has failed to make a good faith effort to rehabilitate and reunify with the child pursuant to section 4041.

■ The father contends that because the DHS did not discuss a reunification plan with him after his release from prison, the DHS failed to make reasonable efforts to rehabilitate and reunify the family. He argues that because of this failure the evidence is insufficient to support the court's findings that he is unable to protect his children from jeopardy and to take responsibility for them within a time reasonably calculated to meet their needs. The father concedes, however, as he must, that the failure of the DHS to fulfill any requirements of section 4041[2] will not preclude the termination of parental rights under section 4055, but is only one factor to be considered in evaluating the parents' efforts to rehabilitate and reunify with the child. *See In re Daniel C.*, 480 A.2d 766, 770 (Me.1984).

■ Here the record reflects that the father was in prison for approximately the first three and one-half years that the children were in State care. On his release from custody, although the DHS demonstrated a willingness to facilitate his visits with the children, such visits were rare and sporadic. Within a one-year period he visited the children only three times. He last visited the children in February 1991. The DHS has never refused him visitation with the children. A home study and psychological evaluation of the father were ordered by the court within approximately two months of the father's release from custody. The home study revealed the father was unemployed. He received a free one-bedroom apartment from his landlord in exchange for labor. The psychologist who evaluated the parents and the children testified that the father had no awareness or understanding of the special needs of the children; that he had features of narcissistic, schizoid and anti-social personality disorders; that these disorders would cause him to fulfill his own needs before considering the needs of the children; and that he would be unable to protect the children or take responsibility for them without intensively working on parenting skills for a number of years. The court also heard testimony that based on this evaluation and the father's failure to regularly and consistently visit his children the DHS determined further reunification efforts would be unproductive. On this record it cannot be said that the court did not consider the reunification efforts of the DHS or that the evidence does not adequately support the court's determination.

Both parents contend that the evidence is insufficient to support the court's finding that it is in the best interest of the children that the rights of the parents be terminated. The mother specifically argues that because her sister, with whom the children have been placed for the past three and one-half years, does not wish to adopt the children and the mother's influence is not harmful to them in any way, her rights were erroneously terminated.

■ The testimony concerning the psychological evaluation of the children disclosed that both children are developmentally delayed and have medical problems and significant behavioral problems. The children are extremely active and their care is difficult. Further, a consistent and structured environment for the children is essential. They need constant and consistent attention by an adult who understands and can meet their special needs. The mother's sister testified that she did not intend to seek adoption of the children. The children do not know their father and have not formed any significant attachment to either parent. The court also heard evidence that the mother has taken no part in any reunification effort except for the psychological evaluation. In the past three and one-half years she visited the children two or three times a year. During each visit she played with the children for a brief period of time and then became occupied with other matters. She did not assume any care or parenting responsibilities of the children during these

---

**2.** 22 M.R.S.A. § 4041 (1992) sets forth the rehabilitation and reunification responsibilities of the family and the Department of Human Ser- vices when a child has been ordered into the custody of the department.

visits. She never made any inquiry as to the educational progress of the children or the requirements for their care. Other than her visits she has had no contact with the children. Her psychological evaluation disclosed that she suffers from a paranoid personality disorder. She has no understanding of the children's needs. The evaluating psychologist opined that she has great difficulty meeting her own needs and would be unable to parent the children without years of intensive therapy.

The opinion of the trial court makes clear that the court was well aware that the inquiry as to the children's best interest is separate and distinct from the court's findings relating to the inability of the parents to protect the children or assume responsibility for them. *See In re Hope H.* 541 A.2d 165, 166 (Me.1988) (statute and case law make clear inability of parent and best interests of child are two distinct elements that must be proved independently). The court expressly stated that it had considered the children's ages, their attachment to their parents, periods of attachment and separation, and their ability to integrate into a substitute home or their parents' home, as well as their physical and emotional needs. *See* 22 M.R.S.A. § 4055(2) (1992) (listing factors for consideration by court in termination proceedings). The record discloses no positive quality in the relationship of the parents and the children. The parents at no time have sought the custody of the children. Rather, they have consistently agreed that the children need the protective custody of the State. The thrust of their instant contention is that the parents' right to intermittently contact the children should be protected. The evidence submitted to the trial court establishes that the children require a setting marked by consistency and stability and a continuance of the parents' inconsistent and erratic contact with the children could diminish the probability of that setting being provided for them. On this record, the trial court reasonably could have been persuaded that it was highly probable that the termination of parental rights is in the best interests of the children. *In re John Joseph V.*, 500 A.2d 628, 629 (Me.1985).

The entry is:

Judgment affirmed.

All concurring.