*1199 OPINION
By the Court,
Shearing, J. :
This is an appeal from a district court order terminating the parental rights of appellant Michael Greeson (“Greeson”). Greeson and respondent Toni Lynn Barnes (“Barnes”) were divorced on March 19, 1987. At the time of their divorce, their son, Kevin, was just over one year old. The divorce decree granted Barnes primary physical custody of Kevin and granted Greeson visitation one week per month. The decree also ordered Greeson to pay $200 per month in child support.
*1200 For the six months following the divorce, Greeson paid $200 per month in child support and exercised his visitation rights five of the six weeks. In September 1987, a review hearing was held and Greeson failed to attend.[1] The district court reduced Greeson’s visitation rights to alternating weekends within the Reno city limits based on Kevin’s young age and Barnes’s uncon-troverted testimony that the trips to California, where Greeson resided, were too difficult for the child.
The parties disputed the frequency with which Greeson exercised his visitation rights for the six or seven months following the September 1987 review hearing. Both parties agreed, however, that between 1988 and the October 1992 trial date, Greeson visited Kevin on only one occasion. According to Barnes, Greeson’s contact with Kevin was minimal during that time, with the last contact via telephone in April 1991. For approximately three years prior to the 1992 trial, Greeson called Barnes once or twice each year and, during those phone calls, never requested to speak with Kevin. Moreover, between the 1987 hearing and the 1992 trial, Greeson sent only $60 in child support and only made those payments after he discovered that Barnes had petitioned for termination of his parental rights.
Because of the sanctity of parental rights, a standard of proof of at least clear and convincing evidence is required before a court can terminate parental rights. NRS 128.090(2); Champagne v. Welfare Division, 100 Nev. 640, 648, 691 P.2d 849, 854 (1984).
NRS 128.105 sets forth the grounds for termination of parental rights.[2] In Champagne, this court designated the considerations *1201 relating to the conduct of the parent as the “jurisdictional” ground, and the considerations relating to the child’s best interest as the “dispositional” ground. In 1989, in reaction to our decision in Champagne which seemed to accord primary emphasis to the rights of the parent over the rights of the child, the legislature added the following language to NRS 128.105: “with the initial and primary consideration being whether the best interests of the child would be served by the termination . . . .” Hearings on S.B. 99 Before the Senate Committee on Judiciary, February 18, 1987, pp. 224-25, 235-36; February 19, 1987, p. 267; February 24, 1987, pp. 319-22; April 16, 1987, p. 1616. This amendment did not alter the requirement set out in NRS 128.105 and Champagne that at least one of the grounds alleging parental fault must be proven by clear and convincing evidence. The Due Process Clause of the Fourteenth Amendment of the United States Constitution mandates this requirement. Santosky v. Kramer, 455 U.S. 745, 769-70 (1982).
Under NRS 128.105, a lower court may terminate a parent’s rights if it finds by clear and convincing evidence that the parent has abandoned the child and that terminating the parent’s rights is in the best interest of the child. On appeal, this court will uphold an order terminating parental rights if substantial evidence supports the district court’s finding that both of these grounds have been established by clear and convincing evidence. See, e.g., Kobinski v. State, 103 Nev. 293, 296, 738 P.2d 895, 897 (1987).
The district court determined that Greeson had abandoned his son Kevin pursuant to NRS 128.105(1). “Abandonment” is defined in NRS 128.012(1) as “any conduct . . . which evinces a settled purpose ... to forego all parental custody and relinquish all claims to the child.” Under NRS 128.012(2), a parent is presumed to have intended to abandon the child if that parent leaves the child in the care and custody of another without provision for the child’s support and without communication for a period of six months.
In the instant case, Greeson failed to provide for Kevin’s *1202 support for approximately five years,[3] visited Kevin only once during that period and had only minimal additional contact with the child during this time. This conduct established the presumption that Greeson intended to abandon Kevin, and the trial court found that Greeson failed to rebut this presumption.
Greeson’s failure to pay child support and failure to exercise visitation rights was undisputed. Greeson merely claimed (1) that he could not locate his son, and (2) that Barnes frustrated his attempts at visits. However, the district court found that Greeson’s claim that he could not locate his son was belied by the fact that Greeson’s own parents maintained visitation with their grandson throughout the five-year period.
While the district court found that Barnes frustrated Greeson’s efforts to visit with Kevin from September 1987 to January 1989, it further found that her failure to encourage contact at that time was not unreasonable where Greeson continually threatened her life and the lives of members of her family, and threatened to abduct Kevin during this period. Greeson argued that his efforts toward visitation were also frustrated after 1989, but the trial court made no such finding. The weight and credibility of a witness’s testimony is within the sole province of the trier of fact. Washington v. State, 96 Nev. 305, 308, 608 P.2d 1101, 1103 (1980). The trial court also found that Greeson made no effort to enforce his visitation rights. Greeson testified during the trial that he could not afford an attorney; however, he later admitted that his father offered him financial assistance to hire an attorney and that he refused. It is no wonder that the trial court did not choose to believe Greeson’s testimony that he did not abandon his son!
Although Champagne v. Welfare Division, 100 Nev. 640, 691 P.2d 849 (1984), established a new standard as to certain aspects of parental rights, it did not change the factors to be considered on the issue of abandonment. Since the Champagne decision, this court has continued to rely upon the reasoning and conclusions of termination cases decided prior to Champagne when considering *1203 abandonment. After the Champagne decision, in Drury v. Lang, 105 Nev. 430, 433, 776 P.2d 843, 845 (1989), this court cited with approval four pre-Champagne cases on the issue of abandonment: Pyborn v. Quathamer, 96 Nev. 145, 605 P.2d 1147 (1980); Sernaker v. Ehrlich, 86 Nev. 277, 468 P.2d 5 (1970); Casper v. Huber, 85 Nev. 474, 456 P.2d 436 (1969); and Carson v. Lowe, 76 Nev. 446, 357 P.2d 591 (1960).[4]
The case at bar presents a picture of abandonment at least as compelling as those presented in Pyborn, Sernaker, Casper, and Carson. Greeson had only negligible contact with Kevin for a period of five years and paid only $60 in child support during that time. In the cases cited above, the fathers’ conduct was comparatively less egregious and this court decided that parental rights were properly terminated. In Pyborn, there were ten months of negligible communication and support. In both Sernaker and *1204 Carson, the fathers lived much farther away from the child than in the case at bar. In Sernaker, the father resided in Pennsylvania while the child resided in Nevada. In Carson, the father resided in Florida and the child in Nevada. Greeson, however, lives in northern California, comparatively close to Kevin.
In Sernaker, the father’s contact with the child was more substantial than in the instant case; he made payments and exercised visitation rights for approximately three years. Greeson paid child support and exercised visitation for only six months. Where the father in Carson sent Christmas and birthday gifts, in the case at bar, the only evidence regarding gifts was the Christmas gift Greeson gave Kevin during the sole visit between 1988 and 1992. This court and other courts have recognized that a noncustodial parent demonstrates an intent not to abandon a child by providing financial support and/or by maintaining contact with the child. Greeson did neither.
In any contested termination of parental rights proceeding involving abandonment, the mere fact that the parent contests the termination may indicate that the parent does not have a “settled purpose ... to forego all parental custody and relinquish all claims to the child.” NRS 128.012(1). However, the trial court is not obligated to accord greater weight to the parent’s belated protestations than to the parent’s failure to provide support and communicate with the child over several years. On the contrary, there is no better illustration of the adage “actions speak louder than words.” When a parent fails to pay child support for five years and makes virtually no gesture demonstrative of real care and concern for the child, subsequent pleas of a lack of intent to abandon the child ring hollow. We hold that the trial court’s finding that abandonment was established by clear and convincing evidence is supported by substantial evidence.
The test for determining the best interest of the child is, “[i]f under no reasonable circumstances the child’s best interest can be served by sustaining the parental tie, dispositional grounds for termination exist.” Champagne v. Welfare Division, 100 Nev. 640, 652, 691 P.2d 849, 858 (1984). In determining whether termination was in Kevin’s best interest, the district court emphasized that Barnes and her present husband, Mr. Barnes, furnished Kevin with a stable environment and consistently provided him with love, attention, discipline, and emotional support. The district court also noted Greeson’s express and implied threats of death and serious bodily injury to Barnes, her father, and her husband, and his threats to abduct Kevin, and was unfavorably *1205 impressed with Greeson’s willingness to make Kevin “a secondary victim of such hostility.” Moreover, Kevin did not wish to speak with Greeson when visitation was attempted under the supervision of the court-appointed child advocate, and Kevin was, in fact, afraid of Greeson. To suggest, as Greeson does, that a seven-year-old’s negative attitude toward a father who has failed to visit with him in five years must necessarily have been induced by the mother is unrealistic and demeans the child.
Kevin is currently eight years old and during the past approximately six years, has only visited with Greeson once. Barnes and her husband have been married for three years and Kevin has resided with them for almost half of his life. As the district court noted, Kevin looks to Mr. Barnes as his father figure. We hold that clear and convincing evidence supports the district court’s conclusion that termination of Greeson’s parental rights is in Kevin’s best interest.
The district court’s findings of fact and conclusions of law are in accord with the statutes and case law of this state, including the Champagne decision. This court has no basis for contesting the findings of the district court which had the opportunity to observe the witnesses and judge their credibility. Accordingly, we affirm the district court’s decision.
Steffen, C. J., and Young and Rose, JJ., concur.

During the trial, Greeson alleged that he called the district court three days before the scheduled review hearing in order to reschedule the hearing. He testified that he attempted to reschedule because his current wife, who was then four months pregnant, told him that she was experiencing problems with her pregnancy. Greeson farther testified that he did not know whether the review hearing was rescheduled and that if it had been rescheduled, he did not receive notice of the new hearing date. In fiis brief on appeal Greeson states that he “assumed that the review hearing had been continued where in actuality it had not.”
There is nothing in the record indicating that Greeson ever contacted the district court and we do not know whether the district court found Greeson’s explanation for his failure to appear at the review hearing credible.
Greeson further alleges on appeal that he did not receive a copy of the district court orders changing visitation at the review hearing. However, he admits that Barnes informed him of the new visitation schedule.

NRS 128.105 states in pertinent part:
An order of the court for termination of parental rights must be made *1201 in light of the considerations set forth in this section and NRS 128.106, 128.107 and 128.108, with the initial and primary consideration being whether the best interests of the child would be served by the termination, but requiring a finding that the conduct of the parent or parents demonstrated at least one of the following:
1. Abandonment of the child;
(Emphasis added.)

Greeson offered two theories for his failure to pay child support. On the one hand, he claimed that he could no longer afford the court-ordered $200 per month child support payment as he was disabled from a job-related injury and on welfare. However, Greeson also testified during the trial that he did not make payments because Barnes did not allow him to see Kevin. He testified, “[([here was nothing to pay, because she wasn’t letting me see him.”
Had Greeson only asserted the former theory, he still would have been unable to rebut the presumption of abandonment since he testified that a paralegal in California told him that he could go to court to modify the divorce decree to reduce the child support payments to an amount within his means. Greeson offered no explanation, for his failure to do so.

In Pyborn v. Quathamer, 96 Nev. 145, 605 P.2d 1147 (1980), this court held that a father who made no real attempts to communicate with his child for a period of approximately ten months and failed or made only token efforts to pay support for the child had abandoned the child. The father in Pyborn claimed that the mother frustrated his attempts to communicate with his child. Pyborn, 96 Nev. at 147, 605 P.2d at 1148. This court deferred to the district court’s finding to the contrary. Id. Moreover, this court emphasized the fact that the father made no attempts to initiate any legal proceedings to impose his visitation rights. Id.
In Sernaker v. Ehrlich, 86 Nev. 277, 468 P.2d 5 (1970), this court upheld the termination of a father’s parental rights on the ground of abandonment. Following a divorce in 1962, the father in Sernaker made child support payments inconsistently and observed visitation every weekend until approximately 1965, when payments and communication with the child became nominal. Id. at 278-79, 468 P.2d at 6. At the time of the termination hearing, the father owed approximately $11,000 in arrearages for wife and child support. Id. at 279, 468 P.2d at 6. This court stated that while nonsupport is not synonymous with abandonment, it is a factor in determining whether a parent has abandoned his child. Id. at 280, 468 P.2d at 7. We held that “[l]ack of support plus other conduct such as a failure to communicate by letter or telephone, or absence of sending of gifts is sufficient to uphold the trial court’s conclusion that the child had been abandoned.” Id. As in Pyborn, both the district court and this court were unpersuaded by the father’s argument that the mother withheld visitation, particularly where the father did not initiate any legal proceedings to enforce his visitation rights.
In Carson v. Lowe, 76 Nev. 446, 357 P.2d 591 (1960), this court upheld the district court’s finding that the father had abandoned his child. We noted that from 1956 to 1959 the father failed to support the child and that communication or attempts at communication with the child during that time were meager. Id. at 449, 357 P.2d at 593. The father’s gifts to the child were limited to the child’s birthday and Christmas. Id. Though the father sought to prove that the mother frustrated his attempts to communicate with his infant son, this court was unpersuaded as he “made no real attempt to insist upon or to enforce his rights of visitation under the divorce decree.” Id. at 449, 357 P.2d at 593.