HOWARD RONALD SERNAKER, APPELLANT, v. SHIRLEY BESSES EHRLICH, RESPONDENT.

No. 6019

April 16, 1970                            468 P.2d 5

*Wiener, Goldwater & Galatz,* and *Herbert L. Waldman,* of Las Vegas, for Appellant.

*Woodburn, Forman, Wedge, Blakey, Folsom and Hug,* and *Roger W. Jeppson,* of Reno, for Respondent.

## OPINION

By the Court, ZENOFF, J.:

The question for decision in this case is whether a nonconsenting father to a termination of parental rights proceeding abandoned his child for a period of six months within the meaning of NRS 128.010(2).[1]

Howard and Shirley were divorced in Pennsylvania in 1962. Shirley was granted custody of their three-year-old son, Jeffrey, and Howard agreed in writing to pay the sum of $175 per week

---

[1]NRS 128.010(2): "Abandonment of child" imports any conduct of one or both parents of a child which evinces a settled purpose on the part of one or both parents to forego all parental custody and relinquish all claims to the child, and a parent or parents of a child who shall leave the child in the care and custody of another without provision for his support and without communication for a period of 6 months shall be presumed to have intended to abandon the child.

for the support of his wife and child. Under the terms of the agreement the father had visitation rights each weekend which he observed. Howard failed in business and by pleading changed circumstances caused his support payments to be reduced to $100 a week in June of 1965 and to $75 per week in December 1965. In no event, however, did he totally keep up his support payments.

Late in 1965 or sometime in 1966 (the record is not clear), Shirley and Howard each remarried. In September of 1966 Shirley and her new husband moved to Reno with Jeffrey. Howard visited his son once in February 1967, stayed for one day, and then returned to Philadelphia. On this occasion he promised Jeffrey $3.00 a week allowance, a bicycle, a guitar and music lessons. He did not keep any of the promises nor did he send any support money except $25.00, which he paid in to the Pennsylvania court. Once he sent a watch to Jeffrey, but it was Jeffrey's own watch that had been left behind almost two years before. He telephoned Jeffrey on one occasion but so upset the boy by his line of conversation that the boy refused to talk to him on another occasion when the father attempted to call. Howard sent his son presents for the Christmas of 1966 but none otherwise.

Essentially it appears that at the time of the hearing Howard was delinquent to the extent of about $11,000 and he justified his failure of support upon the excuses that he was trying to "settle" the arrearages for the payment of one lump sum. In the meantime, he was living in an apartment with his new wife and their three-year-old child, owned an automobile and was earning approximately $800 per month.

The trial court ruled that the facts as recited, and more, sufficiently established Howard's settled purpose to abandon Jeffrey as that term is understood in this type of proceeding and terminated Howard's parental rights to Jeffrey.

1. The primary consideration and dominant purpose is whether or not the termination of parental rights is in the best interest of the child. Casper v. Huber, 85 Nev. 474, 456 P.2d 436 (1969); Carson v. Lowe, 76 Nev. 446, 357 P.2d 591 (1960); NRS 128.090.[2] The court will uphold the termination of parental rights if there is substantial evidence in the record

---

[2]NRS 128.090: *Hearing; evidence and postponement.* At the time stated in the notice, or at the earliest time thereafter to which the hearing may be postponed, the court shall proceed to hear the petition and shall in all cases require the petitioner to establish the facts and shall give full and careful consideration of all of the evidence presented,

to support abandonment under NRS 128.010(2); Casper v. Huber, supra; Carson v. Lowe, supra.

Abandonment is conduct. The typical kinds of conduct which constitute abandonment are the withholding of parental presence, love, care, filial affection and support and maintenance. The conduct must be intentional and must show a settled purpose to relinquish all parental rights in the child. Nonsupport is not synonymous with abandonment but it is a factor in determining whether a parent has abandoned his child. In re Adoption of Minor Child, 438 P.2d 398 (Haw. 1968). Lack of support plus other conduct such as a failure to communicate by letter or telephone, or absence of sending of gifts is sufficient to uphold the trial court's conclusion that the child had been abandoned. In re Adoption of Layton, 196 So.2d 784 (Fla. App. 1967); Wilson v. Barnet, 144 N.W.2d 700 (Minn. 1966); Clark v. Jelinek, 414 P.2d 892 (Idaho 1966); In re Adoption of Jacono, 231 A.2d 295 (Pa. 1967); In re Wilcox' Adoption, 349 P.2d 862 (Ore. 1960); In re Adoption of Resnick, 127 N.Y.S.2d 918 (Misc. 1953); In re Adoption of Neal, 71 Cal.Rptr. 300 (1968).

Whether there has been an abandonment by a parent is determined by the facts in each case. Beltran v. Heim, 236 A.2d 723 (Md.App. 1968); In re Adoption of Neal, supra. Where there is evidence to support the findings of the trial court this court will not substitute its judgment for that of the trial court which had all parents before it, observed their demeanor and weighed their credibility. Carson v. Lowe, supra.

When the trial court in this case found that for the six months preceding the hearing Howard had not, either by communication or support, showed an interest in Jeffrey a presumption was created that his settled purpose was to abandon the child. NRS 128.010(2). The presumption is harsh but one which is the fault of the party against whom it applies. He had the opportunity to overcome the presumption, but all that he could offer was the excuse that he was trying to "settle" the

with due regard to the rights and claims of the parent or parents of such person and to any and all ties of blood or affection, but with a dominant purpose of serving the best interests of such minor person. In the event of postponement, all persons served, who are not present or represented in court at the time of such postponement, shall be notified thereof by the clerk by registered mail.

support arrearages and that Shirley wouldn't let him contact his son.

Her expressed disgust at his unreliability and seeming unconcern to support her and the child appears well-founded. The interim between phone calls was extraordinary for a father who claims devotion for his child. The absence of any other filial attention glares from the record for only at one Christmas, that in 1966, did he send gifts.[3] Otherwise, without explanation he broke the promise to buy the child a bicycle, a guitar and music lessons. He made remarks to the boy on the occasion of the one phone call that so bothered the boy that he refused to talk to his father months later when he called again.

He complained that Shirley withheld visitation from him and threatened to do so in the future, but never did he initiate any legal proceedings to impose his rights of visitation and nowhere do we find any attempt to send the child or his mother money with any regularity. The true love of a parent knows no depths to which the parent will go for the welfare and best interests of his child and anything less than that can be justified only upon serious illness or unusual circumstances and Howard has showed neither.

Jeffrey now lives within the security of the affection and environment of a good home. Time has passed and his real father is a dim memory. Keeping in mind that within parental "rights" there are parental "duties," few of which Howard performed, the interests of the child are better served in his present surroundings. The findings of the trial court will not be disturbed.

Affirmed.

COLLINS, C. J., BATJER, MOWBRAY, and THOMPSON, JJ., concur.

---

[3]The mother returned an uncashed $12.00 check which she received long after the promise to send $3.00 per week had been broken.