This is a termination of parental rights case.
In November 1989, the juvenile court terminated the parental rights of M.F.K. to her children M.W.K., T.D.K., and J.N.K. In the same proceeding, the court also terminated the parental rights of M.K. to her children W.L.K. and J.D.K. M.K. and M.F.K. are sisters, and the termination proceedings regarding their children were consolidated. Both mothers appeal.
Although the rights of the putative fathers to these children were also terminated, only A.P., the father of J.D.K., appeals.
When the state seeks to terminate parental rights, it must first establish by clear and convincing evidence that the children are dependent. Then, the court must consider and reject all alternatives to termination so that it can conclude that termination of parental rights is in the child's best interests. Ex Parte Beasley, 564 So.2d 950 (Ala. 1990).
When a trial court is presented evidence ore tenus, a presumption of correctness attaches to the court's judgment, and, absent a determination that the judgment is so unsupported by the evidence that it is plainly and palpably wrong, we will affirm. Beasley.
In making a determination concerning the dependency of a child, the court must find that the child's parents are either unable or unwilling to discharge their parental responsibilities or that the parents' conduct or condition is such that the parents are unable to properly care for their child and that such conduct or condition is unlikely to change in the future. Section 26-18-7, Code 1975.
Factors which the court considers in making its determination that a parent is unable or unwilling to discharge his or her parental responsibilities include abandonment of the child by the parent, mental deficiency of the parent, abuse of the child by the parent, the parent's conviction and imprisonment for a felony, unexplained serious physical injury to the child indicating intentional conduct or willful neglect by the parent, and failure of reasonable efforts by the Department of Human Resources (DHR) to rehabilitate the parent. Section26-18-7(a)(1) through (6), Code 1975.
Additional factors which may be considered by the court in cases in which the children are not in the parent's physical custody include failure by the parent to provide support, to maintain regular visits, to maintain consistent contact, and lack of parental effort to adjust his circumstances to meet the child's needs. Section 26-18-7(b)(1) through (4), Code 1975.
The record reveals, in pertinent part, that DHR has been involved with the extended K. family since 1977. Further, DHR has been actively involved in trying to help the two mothers develop appropriate parenting skills. DHR has also provided homemaker services and childcare classes. However, despite its involvement with the family, the record indicates little progress in the mothers' situations so as to enable them to provide adequately for their children.
Testing of the mothers also shows that they are limited in their mental abilities. Further, their reliance on "home remedies" *Page 319 
for sicknesses that require medical attention indicates an inability to discharge parental responsibilities.
Concerning the putative father of J.D.K., we note that although he acknowledges paternity of the child he has failed to take any legal steps toward legitimation. Further, he has failed to establish a home for M.K. since their child's birth and has not married the mother. Instead, they continue to live with the mother's parents in a home that at times has been without working plumbing and electricity. Also, since the child's placement in foster care, he has made only one ten dollar support payment.
It would serve no useful purpose to continue to recite record evidence. Suffice it to say that in view of our standard of review, we find ample evidence to support a determination of dependency.
Next, we must examine whether other alternatives to termination were examined and properly rejected.Beasley.
The record is clear that DHR has worked with the parents involved for an extended period of time and that appropriate adjustments allowing for the return of the children have not been made. Further, most of the K. family lives in the same house with the children's mothers, and it is this environment from which the children had to be removed.
In fact, the court's order with regard to all of the children, except J.D.K., stated:
 "The three men who are the fathers of these four children are totally 'out of the picture'. As best the court can determine none of them have ever had any contact with these children or taken any responsibility for them whatever. No evidence was presented as to any potential placement of these children except with their mothers. Long term foster care is rejected by the court as not being in the best interests of these children. Therefore, the sole alternative to termination of parental rights considered by the court must be and is returning their custody to their mothers.
 "These cases are highly unusual, and in the experience of this court, unique. The return of the children in question to their mothers would involve considerably more than just returning them to their mothers. The mothers are a part of a family, the likes of which are seldom seen. This family, consisting of the maternal grandparents of the children who are the subject of these proceedings, certain of their children and grandchildren, as well as unrelated adult males, have for a number of years shared the same living accommodations, on occasion with as many as thirteen to fifteen people living in a small house. . . .
 "Anyone who has heard the evidence in these cases and observed the parties and 'the family' must be aware that the decision in these cases is not so much a matter of whether the children will be returned to their mothers, but whether they will be returned to 'the family.'
 ". . . While there is evidence that the living conditions of the family have clearly improved during the pendency of these termination of parental rights cases, the court is not satisfied that these changes will be of long duration. Considering all of the evidence in this case, it is far more likely that if these children were returned to their mothers living conditions would quickly deteriorate, partly because of the increased burden of having several more people in the household. . . .
 ". . . [T]his court is clearly convinced that the parents . . . are totally lacking in the necessary skill, knowledge and intellectual capacity to rear children. If these children were returned to their mothers, they would be raised as a part of 'the K. family.' That is clearly not in their best interests, and in the opinion of the court this factor far outweighs any legal presumption in favor of the mothers' rights to custody. . . ."
Because the putative father of J.D.K., A.P., was involved in the termination proceedings, the court entered a separate order with regard to a termination of parental rights to that child. Specifically, the court also noted the following facts concerning termination of Mr. P.'s rights: *Page 320 
 "He [A.P.] has never married the child's mother or taken any steps to legitimate the child. . . .
 ". . . Mr. P.'s inability or unwillingness to extricate himself from the K. family and establish a proper home for his child, if in fact she is his child, clearly shows his inability or unwillingness to discharge his responsibility to that child. . . . Mr. P. has had ample opportunity to make provision for his daughter and has failed to do so.
 ". . . The court further finds it is in the best interests of [J.D.K.] for the parental rights of her parents to be terminated and for her to be placed in the permanent legal custody of the State of Alabama Department of Human Resources."
In view of the above and the attendant standard of review, we affirm the court's determination that termination was in the children's best interest.
M.K. also asserts on appeal that the court committed reversible error when it admitted, over her objection, reports from psychological tests she was given as a minor. However, even if we were to accept that such admission was error, there is other record evidence which amply supports the trial court's conclusions concerning M.K.'s ability to parent her children. We will not reverse for an error without harm. Rule 45,Alabama Rules of Appellate Procedure.
Consequently, the trial court's judgment is due to be affirmed.
AFFIRMED.
INGRAM, P.J., and RUSSELL, J., concur.