*1299 OPINION
By the Court,
Shearing, J.:
This is an appeal from the district court’s order terminating the parental rights of natural parents, appellants Rosemary Emilie Bush (“Rosemary”) and her husband Alan Dean Bush (“Alan”), as to their children Alan Everett Bush (“Alan Everett”) and Frisco Lou Bush (“Frisco”). Rosemary and Alan are mentally challenged. Rosemary has an IQ of 65, Alan an IQ of 71. Their children are also mentally challenged and participate in specialized school programs.
In December, 1988, Clark County Juvenile Court Services received a physical abuse complaint concerning the Bush family. A child protective services worker was assigned to the matter. She attempted to work with the Bushes to resolve the problems of Alan’s physical abuse of one of the Bush children, marital discord between Rosemary and Alan, and a filthy home. At that time, Alan had moved out of the home temporarily, and Rosemary refused to accept referrals and other family assistance. After eight months of unsuccessful efforts, the worker recommended terminating Rosemary and Alan’s parental rights.
On August 4, 1989, after the unsuccessful efforts to remedy the home situation, Alan Everett and Frisco were placed in Child Haven. The Clark County District Attorney filed a neglect petition alleging that Rosemary and Alan were neglectful in caring for their children because of marital problems, including arguing and fighting in front of the children. Additionally, it was alleged that Alan spent the family income irresponsibly without leaving enough for monthly obligations and the children had developmental delays. On August 18, 1989, Rosemary and Alan admitted to the neglect petition. The matter was then transferred to the Nevada State Division of Child and Family Services (“DCFS”) for action. A case plan was filed on October 17, 1989, listing objectives to attain reunification of Alan Everett and Frisco with Rosemary and Alan and ordering them to comply with the plan. The matter came before the court for review twice each year from 1990 through 1993. By November 1993, termination efforts had been commenced. The petition to terminate the parental rights of Rosemary and Alan to Alan Everett and Frisco was filed on June 17, 1994. Rosemary and Alan were appointed counsel for this proceeding. After a hearing in October, 1994, the district court filed a decision granting the petition.
*1300 In its decision, the district court found two parental fault grounds to support termination of the Bushes’ parental rights: parental unsuitability and failure of parental adjustment. The court found that even when the Bushes were willing, they failed to “assimilate and practice the lessons being taught” and would never be able to reach a level of ability sufficient to meet the physical and emotional needs of their children. The court also determined that (1) efforts of the agencies involved were reasonable and appropriate, (2) the testimony and exhibits reflected that parenting classes, independent living, financial aid and assistance and other appropriate services were extended to the family, (3) DCFS made monthly visitation efforts, and (4) the level of services extended to the family reflected the Bushes’ failure to be receptive to the services. The district court also determined that (1) the children’s best interests would not be served under any reasonable circumstances by sustaining the parental tie, (2) the children have been in foster care for three and one-half years, (3) the foster parents are willing to adopt the children, (4) the children have “bonded” to the foster parents, (5) further efforts to reunify the Bushes with their children “will not change the obvious,” and (6) reunification is not foreseeable even if the court were to deny the petition to terminate parental rights. On October 25, 1995, the district court filed Findings of Fact, Conclusions of Law, and Order Terminating Parental Rights. The issue on appeal is whether clear and convincing evidence supports the district court order. We conclude that it does.
The first question is whether the evidence supports the findings of parental unfitness and/or failure of parental adjustment under NRS 128.105. For determining parental unfitness, NRS 128.106 provides the following guidance:
In determining neglect by or unfitness of a parent, the court shall consider, without limitation, the following conditions which may diminish suitability as a parent:
1. Emotional illness, mental illness or mental deficiency of the parent which renders the parent consistently unable to care for the immediate and continuing physical or psychological needs of the child for extended periods of time.
For determining whether there has been a failure of the parents to adjust, NRS 128.107 gives the following guidance:
If a child is not in the physical custody of the parent or parents, the court, in determining whether parental rights should be terminated, shall consider, without limitation:
1. The services provided or offered to the parent or parents to facilitate a reunion with the child.
*1301 2. The physical, mental or emotional condition and needs of the child and his desires regarding the termination, if the court determines he is of sufficient capacity to express his desires.
3. The effort the parent or parents have made to adjust their circumstances, conduct or conditions to make it in the child’s best interest to return him to his home after a reasonable length of time, including but not limited to:
(a) The payment of a reasonable portion of substitute physical care and maintenance, if financially able;
(b) The maintenance of regular visitation or other contact with the child which was designed and carried out in a plan to reunite the child with the parent or parents; and
(c) The maintenance or regular contact and communication with the custodian of the child.
4. Whether additional services would be likely to bring about lasting parental adjustment enabling a return of the child to the parent or parents within a predictable period. For purposes of this section, the court shall disregard incidental conduct, contributions, contacts and communications.
The evidence supporting both parental unfitness and parental failure to adjust is essentially the same in this case. The children have been out of the custody of the parents since August, 1989, after a six-month period when Child Protective Services tried to work with the parents to keep the children in the home. State and county social workers tried for almost six years to assist the parents to reach the point where they could appropriately take care of their children. They were unable to do so.
The evidence is undisputed that each parent has a mental deficiency. Whether the deficiency renders each consistently unable to care for the immediate and continuing needs of the children for extended periods of time is the disputed question. Clearly, the Bushes love their children and have made some efforts toward becoming better parents. For example, they have sought more appropriate housing, have attended some parenting classes and managed their money more responsibly. However, they refused to complete either counseling or parenting classes. Randall Stiles, a child development specialist from the Children’s Resources Bureau of the DCFS testified that after interviewing their social worker and the Bushes, and after observing the Bushes during a monthly hour-long visit with their children, he concluded that the Bushes had little to no desire to complete the case plan and were not cognizant of their own weaknesses as parents.
*1302 Rosemary admitted at the hearing, and the history of the case demonstrates, that they continue to resist the assistance of various agencies both to improve their abilities and to help the children to overcome their deficiencies. The children both have very special needs which would daunt an above-average parent without outside assistance. The admission of the persistent refusal of the parents to recognize the need for assistance, and the testimony of the social workers of the six years of effort, provide clear and convincing evidence that the Bushes are unable to meet the immediate and continuing needs of the children, both because of their unfitness as parents to these children, and their failure to adjust as parents. There is no reason to believe that they will not continue to be substantially incapable of parenting.
We note that other courts which have reached this issue have terminated parental rights when mental deficiency prevents the parent from being a “fit” parent. For example, in In re Interest of D.L.S., 432 N.W.2d 31, 35 (Neb. 1988), the court affirmed the termination of parental rights where the mother “suffered from a mental deficiency . . . which would prevent her from ever acquiring adequate parenting skills.” The court concluded that the mother “remained substantially incapable of applying what she was taught.” Id. at 37.
Courts have also terminated parental rights where a mental deficiency results in “failure of parental adjustment” despite the provision of adequate resources to the parent. In M.F.K. v. State Dept. of Human Resources, 571 So. 2d 317, 318 (Ala. Civ. App. 1990), tests showed that the mothers were “limited in their mental abilities.” The court affirmed termination, concluding that where a state agency worked with the parents for an “extended period of time,” possibly from 1977 until 1989, “appropriate adjustments allowing for the return of the children” were not made. Id. at 319. Likewise, in Ex parte State Dept. of Human Resources, 624 So. 2d 589 (Ala. 1993), a petition requesting parental rights termination alleged that the parents had an emotional or mental illness which made them unable to care for the needs of their child. The trial court found clear and convincing evidence that it was in the child’s best interest to terminate parental rights. The court made this finding despite the fact that the parents regularly visited the child during scheduled times while the child was in foster care, the mother attended a parenting class, and the father remained employed, because there was no evidence that the parents tried to improve the condition of their home or their circumstances, and the parents had made no reasonable efforts to prevent the need to remove the child from their care. Id. at 591. The appeals court reversed on the basis that the *1303 parents had not been afforded an opportunity to parent the child because she or he had been taken from them immediately after her birth. The Alabama Supreme Court reversed, concluding that the parents failed to make any changes in their living conditions even after a state agency requested that they accomplish rehabilitation.
In other cases, courts have reversed orders terminating parental rights where the state failed to show that termination was in the child’s best interests,[1] or failed to provide appropriate services for the mentally challenged parents.[2] Some courts have required the district court to make a finding of current unfitness. None of these problems is present in the instant case.
We also conclude that there was clear and convincing evidence that the best interests of the children would be served by termination of the parental rights. Frisco and Alan Everett have special needs and require a level of care that is arguably difficult even for a person of ordinary intelligence to provide. In addition, both boys have spent at least four years in their present foster home. When the boys were placed in foster care, Frisco was ten months old and Alan Everett was two years old. The court-appointed special advocate (“CASA”) observed the boys in their foster home for two years and believes that the foster parents relate well to the boys. The foster mother testified that if the children were free for adoption, she and her husband would adopt them. The *1304 child development specialist at the DCFS recommended that Frisco and Alan Everett remain in foster care so that their physical, developmental, and emotional needs continue to be met. We conclude that Frisco’s and Alan Everett’s best interests are not served by sustaining the tie to Rosemary and Alan.
The district court noted its dismay that Frisco and Alan Everett have remained in foster care for five years. We agree with the court’s expressed dissatisfaction. While the parents’ right to retain their children is an important consideration in the analysis, the rights of the children to a stable future with a loving family must be paramount. Otherwise, the children’s development is compromised for the sake of the parents. Thus, we affirm the order of the district court.
Young and Rose, JJ., concur.

For example, in Glover v. Alabama Dept. of Pensions and Sec., 401 So. 2d 786 (Ala. Civ. App. 1981), the court’s decision to reverse the order of termination turned on the state’s failure to establish that termination presented a viable alternative to better serve the future welfare of the children. Id. at 788. The court concluded that it was unlikely that the children would be adopted. Id. The mother had a low I.Q. but was “functional.” Id. She also had little income “and has been less than successful in meeting some of the goals set by her caseworkers over the years.” Id.

In two cases cited by appellants, the court reversed termination orders because the state failed to provide services. In In re Victoria M., 255 Cal. Rptr. 498, 499-500 (Ct. App. 1989), the father had abandoned the children and the mother was “in the borderline range of intelligence.” No accommodation was made for the mother’s special needs in providing services so that she could be reunified with her children, and her disabilities were not considered in determining what services would best suit her needs. The court reversed the termination order, concluding that “the rights of a developmentally disabled parent may not be terminated without first assessing whether the services offered by the state through regional centers may enable the family of a disabled person to remain intact.” Id. In In re Hickman, 489 So. 2d 601, 602 (Ala. Civ. App. 1986), the court concluded that termination was not supported by sufficient evidence where the reasons behind termination were poverty and the “limited mentality” of the mother; thus the court reversed and remanded. The agency seeking termination had not provided the family with any aid.