IN THE MATTER OF THE PARENTAL RIGHTS AS TO D.R.H., T.V.G., AND C.A.G.

VINCENT L. G. AND CRISTAN H., APPELLANTS, *v.* THE STATE OF NEVADA DIVISION OF CHILD AND FAMILY SERVICES, DEPARTMENT OF HUMAN RESOURCES, RESPONDENT.

No. 41352

July 12, 2004                                    92 P.3d 1230

---

[20]114 Nev. 910, 965 P.2d 901 (1998).

[21]We have considered Allred's other arguments and conclude they are without merit.

*Rick Lawton,* Fallon, for Appellant Vincent L. G.

*Michael L. Shurtz,* Elko, for Appellant Cristan H.

*Brian Sandoval,* Attorney General, and *Karen R. Dickerson,* Deputy Attorney General, Carson City, for Respondent.

Before BECKER, AGOSTI and GIBBONS, JJ.

## OPINION

By the Court, AGOSTI, J.:

Appellant Cristan H. is the natural mother of minor children D.R.H., T.V.G. and C.A.G. At the time of the district court's hearing on the petition to terminate parental rights, D.R.H. was seven years old, T.V.G. was six years old and C.A.G. was four years old. All three children are boys. Appellant Vincent G. is the

natural father of T.V.G. and C.A.G. Cristan and Vincent lived together on and off throughout the children's lives, but remained unmarried.

Respondent Division of Child and Family Services (DCFS) removed the children from Cristan's custody in April 2000. On April 6, law enforcement officers had found the children, unsupervised, playing on a busy highway. At that time, the children were ages five, four and two. Cristan was found asleep in her home. A drug test later that day revealed that Cristan had used amphetamines. The next day, C.A.G. stopped breathing and was taken to the hospital. Physicians discovered bruising on C.A.G. that was consistent with forceful grabbing. A physician contacted DCFS, requesting protective custody of C.A.G. DCFS took legal custody of all three children, placing physical custody of the children with Vincent. During the summer of 2000, after learning of Vincent's third domestic violence charge and because of his failure to comply with interstate placement restrictions, DCFS removed the children from his custody. After nearly 2 1/2 years of attempts to return the children to Cristan and Vincent, DCFS petitioned the district court to terminate Cristan's and Vincent's parental rights. After conducting a termination proceeding, the district court issued an order terminating both Cristan's and Vincent's parental rights.

On appeal, Vincent argues that NRS 128.109(2) is unconstitutional as it infringes on his substantive due process rights. This statute establishes a presumption that children who have been placed outside of their homes for fourteen of twenty consecutive months have their best interest served by parental termination. Additionally, both parents argue that clear and convincing evidence did not support the district court's termination of their parental rights and that termination of their rights was not in the children's best interest. We conclude that NRS 128.109(2) is constitutional and that substantial evidence supports the district court's decision to terminate Cristan's and Vincent's parental rights.

*Constitutionality of NRS 128.109(2)*

Vincent contends that NRS 128.109(2) violates his substantive due process rights because it interferes with the parent-child relationship.

This court reviews questions of law de novo.[1] We recognize that a parent's interest in raising his or her child is a fundamental

---

[1]*SIIS v. United Exposition Services Co.*, 109 Nev. 28, 30, 846 P.2d 294, 295 (1993).

right.[2] Parental termination proceedings implicate this fundamental right. We analyze substantive due process challenges to statutes impinging on fundamental constitutional rights under a strict scrutiny standard.[3] The statute in question, NRS 128.109(2), must therefore be "narrowly tailored to serve a compelling [state] interest."[4] Pursuant to NRS 128.109(2), it is presumed that termination of parental rights will serve a child's best interest when "a child has been placed outside of his home pursuant to chapter 432B of NRS and has resided outside of his home pursuant to that placement for 14 months of any 20 consecutive months."

In determining whether the statute is narrowly tailored to serve a compelling state interest, we turn first to the state interest involved. We have previously held that NRS 128.109(2) expresses "the general public policy to seek permanent placement for children rather than have them remain in foster care."[5] We observe that it makes good sense and exceedingly sound public policy for the district court, after the requisite time has passed, to evaluate whether continuing attempts to return a child to the home are in the child's best interest. Certainly the state has a compelling interest in assuring that abused and neglected children achieve safe, stable and permanent home environments within which to be reared. Both periodic placement reviews[6] and the statute in question, which authorizes a presumption in favor of termination after a child has spent a significant time in foster care, address this compelling interest. Without placement reviews and without a statute granting a presumption in favor of termination when a child has been in foster care for a significant time, a child is susceptible to drift for an indefinite length of time within the foster care system. If a child has spent fourteen or more of twenty consecutive months outside the home of either or both parents, the presumption that termination of parental rights is in the child's best interest is more than justified.

Next, we turn to the question of whether NRS 128.109(2) is narrowly tailored. We observe first that the statute applies only where a child is removed from the home because of parental abuse or neglect pursuant to NRS Chapter 432B. Additionally, we note

[2]*Matter of Parental Rights as to J.L.N.,* 118 Nev. 621, 625, 55 P.3d 955, 958 (2002).

[3]*Id.*

[4]*Id.*

[5]*Id.* (examining NRS 128.109(2), in conjunction with NRS 432B.553(2), which provides for a plan of permanent placement when a child remains outside the home for fourteen consecutive months).

[6]*See* NRS 432B.580 (mandating that, when a child is placed into protective custody, the court must review the placement semiannually).

that the statute's presumption is rebuttable. Parents are free to present evidence showing that termination of their parental rights is not in a child's best interest. Also, the statute must be read in conjunction with NRS 128.105, which requires the court to examine the child's best interest and also to make a determination concerning parental fault. Moreover, the presumption addresses the compelling state interest of planning for safe, stable and permanent placements for abused and neglected children. Therefore, we conclude that NRS 128.109(2) is narrowly tailored to promote the state's compelling interest in the welfare of and permanency planning for children who have been taken from the physical shelter of their parents' custody. Accordingly, Vincent's argument is without merit.

### Termination of parental rights

In order to terminate parental rights, a petitioner must prove by clear and convincing evidence that termination is in the child's best interest and that one of the enumerated parental fault factors set forth in NRS 128.105(2) exists.[7] If substantial evidence in the record supports the district court's determination that clear and convincing evidence warrants termination, we will uphold the termination order.[8] In the present case, the district court determined that terminating Vincent's and Cristan's parental rights was in the children's best interest. Although NRS 128.105(2) only requires a finding of one of the enumerated parental fault factors, the district court here found parental fault on the grounds of neglect, unfitness, failure of parental adjustment, risk of serious injury and token efforts to reunify with the children.[9]

### Parental fault
#### Neglect

The district court determined by clear and convincing evidence that, due to Cristan's persistent drug abuse and her neglect of the children's needs, Cristan failed to provide her children with proper parental care.[10] Several instances supported the district court's determination. First, DCFS had found the children in a dirty condition and injured while in Cristan's care. Second, DCFS reported that the children were found unsupervised on two separate occa-

[7]*Matter of Parental Rights as to N.J.,* 116 Nev. 790, 801, 8 P.3d 126, 133 (2000).

[8]*Id.* at 795, 8 P.3d at 129.

[9]NRS 128.105(2)(b)-(f).

[10]*See* NRS 128.014.

sions. On one occasion, law enforcement officers found the children playing on a busy highway while Cristan was sleeping in her home. A drug test later that day revealed that Cristan had used drugs. Third, Cristan had tested positive for cannabinoids and amphetamines while pregnant with C.A.G. Finally, the district court noted several incidents of domestic violence had occurred in the home while the children were present and, as a result, the children were placed in harm's way.

The district court also determined by clear and convincing evidence that, in light of Vincent's inability to control his temper, his participation in numerous domestic violence incidents and his failure to consistently communicate with the children, Vincent failed to provide the proper care necessary for the children's emotional well-being. The district court found that Vincent had engaged in repeated instances of domestic violence. In one of these incidents, Vincent pushed Cristan while she held T.V.G. These incidents sometimes occurred in front of the children. Moreover, when the children were not in Vincent's immediate custody, he failed to consistently communicate with them. For example, when DCFS removed the children from Cristan's custody in 1997 and again in 1998, Vincent did not attempt to regain physical custody or request that DCFS return the children to his care. He also failed to consistently and meaningfully communicate with the children between June 2000 and June 2002, thereby disregarding the children's emotional needs.

Accordingly, we conclude that substantial evidence supports the district court's determination that Cristan and Vincent neglected their children.

### Unfitness of parent

NRS 128.106(6) provides that, when determining parental unfitness, a court may consider felony convictions of the parent "if the facts of the crime are of such a nature as to indicate the unfitness of the parent to provide adequate care and control to the extent necessary for the child's physical, mental or emotional health and development." The district court noted that, despite a case plan tailored to treat Vincent's problems with anger management and domestic violence, at the time of the termination hearing, Vincent was serving a sentence of imprisonment for his third domestic violence conviction, a felony under NRS 200.485(1)(c). Vincent's felony conviction was especially relevant given the district court's determination that Vincent was often unable to control his temper. Vincent's contact with DCFS, in which he verbally attacked social workers on the telephone, was also probative of his aggressive ten-

dencies and inability to manage his anger. Thus, the district court properly considered Vincent's felony conviction.

The district court also found that the children had witnessed several of these domestic violence incidents, had become involved in at least some of them, and that the children behaved inappropriately by acting like their parents. Vincent argues that the district court failed to consider that he was being "brushed off" by DCFS, in that DCFS was not promoting reunification, and that DCFS was not concerned with his rights as a parent. We need not address these allegations, however, because Vincent did not counter the evidence demonstrating the negative effect of his behavior on the children's emotional well-being. Moreover, the district court found that Vincent had failed to consistently communicate with the children while they were in foster care and, therefore, failed to provide proper guidance and support.

The district court found that, for much of the children's lives, Cristan had abused drugs.[11] Moreover, the district court determined that Cristan's drug use often rendered her unable to provide the appropriate care for the children and, at times, put the children in danger, such as allowing the children to wander the streets unsupervised and abusing drugs while pregnant. Additionally, the district court found repeated incidents of domestic violence in the home, which often placed the children at risk of harm.

The district court found by clear and convincing evidence that neither Cristan nor Vincent were able to offer continuous care to the children, whether the interruption arose from violence in the home, drug use or neglect. The district court further concluded that, because of their respective faults, both parents had failed "to provide [the children] with proper care, guidance and support."[12] We conclude that substantial evidence supports the district court's finding of parental unfitness.

### Failure of parental adjustment

The district court determined that Vincent and Cristan had not adjusted their conduct or circumstances, or made reasonable efforts to do so, within a reasonable time to warrant the return of the children to their care.[13]

---

[11]NRS 128.106 sets forth specific considerations in determining neglect or unfitness. NRS 128.106(4) provides that "[e]xcessive use of intoxicating liquors, controlled substances or dangerous drugs which renders the parent consistently unable to care for the child," is one such factor.

[12]NRS 128.018 ("'Unfit parent' is any parent of a child who, by reason of his fault or habit or conduct toward the child or other persons, fails to provide such child with proper care, guidance and support.").

[13]See NRS 128.0126; NRS 128.107.

The district court found by clear and convincing evidence that, since DCFS had removed the children from Cristan's custody, Cristan had failed to substantially comply with her case plan by failing to maintain stable employment and, more importantly, by failing to maintain a drug-free lifestyle. Cristan argues that testimony from her Henderson caseworkers demonstrates that she substantially complied with her case plan, that her failure was partly due to the revolving door of social workers assigned to her case and that DCFS enacted procedures to weaken the family bonds, such as refusing to place the children in Henderson, where she could be near to them.[14] Cristan, however, was unable to dispute the fact that she did not remain drug free. Nor did she counter evidence that her drug use negatively affected the children. Furthermore, placement of the child near the parent must be consistent with the best interest of the child. DCFS could reasonably have concluded that, due to the lack of consistency in Cristan's living arrangements and her continued substance abuse, remaining with stable foster parents in Elko[15] was in the children's best interest.

The district court found by clear and convincing evidence that, since removal, Vincent had been convicted of a third domestic violence offense and had been terminated from his employment due to an altercation at work. Additionally, Vincent's treatment of DCFS social workers supported the district court's determination that Vincent had failed to curb his temper. Vincent argues that DCFS's failure to follow procedure created animosity between him and the social workers, making it unproductive for him to communicate with DCFS. Vincent contends that DCFS failed to address his concerns and ignored his repeated requests to place the children with his family. Vincent's animosity to DCFS does not excuse his failure to regularly communicate with his children. Nor was he consistent in his attempts to regain custody of the children. While Vincent had begun to send letters to the children in the summer of 2002, the district court properly determined that these efforts were too little, too late, and that Vincent had not changed the circumstances and conditions that had led to removal.

Accordingly, we conclude that substantial evidence supports the district court's finding that the parents had failed to modify their

[14]See NRS 432B.540(2) (providing that DCFS place the children as near to the parents as "is consistent with the best interests and special needs of the child").

[15]Cristan and Vincent had previously lived in Ely, where the children had been born and raised. After DCFS took custody of the children, Cristan moved to southern Nevada to obtain employment and enter a rehabilitation program.

conduct within a reasonable time to justify the return of the children to either parent.

### Risk of serious injury

Based on its factual findings, the district court determined that Cristan's drug problems and her failure to adjust her circumstances would cause the children to suffer emotionally and would put them at risk of physical harm if they were returned to her care. The district court noted Vincent's lack of communication with the children, the children's integration into the foster home and that the children had been exposed to domestic violence throughout their lives.

Additionally, DCFS cautioned that Vincent was incarcerated at the time of the termination proceedings, was unemployed, lacked stable housing and lacked foster care licensing for Cristan's child, D.R.H., who was neither Vincent's biological nor adopted child. While Vincent insists that the children could have stayed with relatives in Utah, the relatives had not obtained foster care licensing needed for D.R.H., placing him at risk of separation from his brothers. Moreover, at the termination proceeding, there was conflicting testimony as to whether Vincent's relatives were serious about caring for the children long-term. DCFS was also awaiting a response from Utah on whether the state would accept interstate placement. Accordingly, the district court properly determined that the uncertain situation would expose the children to a risk of serious emotional or physical injury.

### Token efforts

Pursuant to NRS 128.109(1)(a), because the children were in foster care for over thirty consecutive months, a presumption arose that Cristan and Vincent had "demonstrated only token efforts" to reunify with their children. The district court also considered additional evidence demonstrating that the parents had failed to make any attempt to overcome their respective faults or to reunify with their children.

The district court found that Cristan's failure to adequately address her drug problem, even after DCFS had provided extensive drug rehabilitation services, demonstrated that she had made only a token effort to become a fit parent. Similarly, the district court concluded that, despite his participation in numerous anger management courses, Vincent had also failed to adequately address his anger problems. The district court also considered that, while Vincent testified that he had urged his attorney to get the matter

back to court, Vincent failed to provide a reasonable explanation as to why he did not contact the children through the foster parents or DCFS. Similarly, Vincent's argument that DCFS's animosity towards him prevented him from communicating with his children is unreasonable. Vincent's failure to demonstrate his ability to provide continuous long-term care for the children supported the district court's conclusion that he had made only token efforts to eliminate risks to the children and to become a fit parent.

Accordingly, we conclude that substantial evidence supports the district court's finding that Cristan and Vincent had made only token efforts to reunify with their children.

### Best interest

"The continuing needs of a child for proper physical, mental and emotional growth and development are the decisive considerations in proceedings for termination of parental rights."[16] These considerations are also relevant to the children's best interest.[17]

As indicated above, the district court found that both Vincent and Cristan had neglected their children, were unfit as parents, had failed to adjust their conditions or circumstances to reunify with their children and had made only token efforts in doing so. Moreover, the district court found that returning the children to either parent would put the children at substantial risk of harm.

The district court also found by clear and convincing evidence that Cristan had not completed her DCFS-sponsored case plan, as she had failed to overcome her drug problems.[18] While Vincent completed his case plan by his continued participation in anger management and domestic violence courses, his problems in these areas continued even after completion of the courses.

Next, the district court found that neither parent was able to meet the specific mental and emotional needs of the children.[19] The district court noted that Vincent failed to communicate with the children for almost two years. Vincent responds that he continually

---

[16]NRS 128.005(2)(c).

[17]*See Matter of N.J.*, 116 Nev. at 800, 8 P.3d at 133.

[18]*See Cooley v. State, Dep't of Hum. Res.*, 113 Nev. 1191, 1197-98, 946 P.2d 155, 157 (1997) (considering whether a parent completes a DCFS-sponsored case plan when determining the best interest of the child), *overruled on other grounds by Matter of N.J.* 116 Nev. at 800 n.4, 8 P.3d at 132 n.4.

[19]*See Bush v. State, Dep't Hum. Res.*, 112 Nev. 1298, 1303-04, 929 P.2d 940, 944 (1996) (considering whether the parent is able to meet the specific mental, emotional and developmental needs of the child when determining the best interest of the child).

demanded the return of his children, and that his lack of communication with DCFS was a direct result of DCFS's failure to reunify the family. The record, however, does not support Vincent's assertion. The district court also found that Cristan had failed to provide for her children's emotional needs, which was often a result of her drug addiction.

Additionally, the district court found that the case history was replete with incidents of domestic violence between Cristan and Vincent, and that the children were present during several violent events. Witnessing these incidents had also affected the children's emotional well-being, as evidenced by the foster parent's description of their behavior. The district court concluded that, because of the pattern of domestic violence, Cristan and Vincent had been unable to provide a safe home for the children. Additionally, the children were sometimes caught in the middle of the fight, as evidenced by Cristan accidentally striking D.R.H. during one incident. Finally, NRS 432B.157 provides a rebuttable presumption that placing the child with a parent who has engaged in domestic violence does not serve the child's best interest. Here, both parents had engaged in domestic violence acts on more than one occasion. Neither parent provided any evidence rebutting this presumption.

The district court also found the testimony of clinical psychologist Dr. Ronald G. Seaborn persuasive. Dr. Seaborn testified that "the parents have demonstrated a history of hedonistic, self-indulging, self-destructive behavior without care or consideration for the serious detrimental effects this behavior was having on the children." Vincent argues that the district court failed to consider that DCFS had not provided Dr. Seaborn with a complete report. Indeed, Dr. Seaborn testified that his impression was that the father had been out of the picture, that Dr. Seaborn himself was unaware of the programs in which the parents had participated, that he had only received a negative history of the parents and that, had he been provided with this information, his final opinion would have been different. He also testified that he was not making a determination on whether termination of parental rights was in the children's best interest. As Dr. Seaborn testified to the basis of his opinion and the limitations of his opinions, the district court was free to weigh his testimony accordingly. DCFS's failure to provide a complete report to Dr. Seaborn does not, under these circumstances, preclude the admissibility of his testimony. Rather, it affects the weight the district court might have accorded Dr. Seaborn's observations and opinions. We perceive no abuse of discretion by the district court in favorably considering Dr. Seaborn's testimony. We further note that Vincent and Cristan fully availed

themselves of the opportunity to cross-examine Dr. Seaborn on the information upon which he based his opinion.

Additionally, the district court found, by clear and convincing evidence, that the boys were adapting well to the foster home and had made some positive adjustments while in foster care. The foster mother had testified that the children rarely mentioned their parents.[20] At the time of the termination proceedings, these young children had lived with the foster parents for over two years.[21]

Finally, the district court noted that, because the children had remained in foster care for over thirty consecutive months since their removal pursuant to NRS Chapter 432B, under NRS 128.109(2), a presumption arose that terminating Vincent's and Cristan's parental rights was in the children's best interest. Substantial evidence supports the district court's finding that neither parent has rebutted this presumption. Accordingly, we conclude that substantial evidence supports the district court's determination that termination of parental rights was in the children's best interest.[22]

## CONCLUSION

The district court found by clear and convincing evidence that both parents were negligent, unfit and had failed to adjust their faults to obtain custody of the children, that return of the children to either parent would place the children at risk of harm and that the parents had made only token efforts to regain custody. The district court also determined by clear and convincing evidence that terminating Cristan's and Vincent's parental rights was in the children's best interest. Moreover, because the children had remained in foster care for over thirty months since their removal, a presumption arose that terminating Cristan's and Vincent's parental rights was in the children's best interest. Having reviewed the record, we conclude that substantial evidence supports the district court's decision. Accordingly, we affirm the judgment of the district court.

BECKER and GIBBONS, JJ., concur.

[20]*See Matter of Parental Rights as to Gonzales,* 113 Nev. 324, 335, 933 P.2d 198, 206 (1997) (noting that the mother "was no more than a friendly stranger to the girls"), *overruled on other grounds by Matter of N.J.,* 116 Nev. at 800 n.4, 8 P.3d at 132 n.4.

[21]*See Bush,* 112 Nev. at 1303, 929 P.2d at 944 (considering whether the child was placed into foster care at a young age when determining the best interest of the child).

[22]While Vincent argues that DCFS should have placed the children with his relatives, this argument has no bearing on whether the district court properly terminated his parental rights, and therefore, we need not consider it.