**141 Nev., Advance Opinion 20**

## IN THE SUPREME COURT OF THE STATE OF NEVADA

| | |
|---|---|
| IN THE MATTER OF PARENTAL RIGHTS AS TO R.A.S. | No. 88174 |

SHIANNA G.,
Appellant,
vs.
LOGAN S.,
Respondent.



FILED

APR 24 2025

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY_____
CHIEF DEPUTY CLERK

Appeal from a district court order terminating parental rights.
Fourth Judicial District Court, Elko County; Kriston N. Hill, Judge.

*Reversed.*

Hillewaert Law Firm and Diana J. Hillewaert, Elko,
for Appellant.

Ruby Mountain Law, Ltd., and Angeline Portel, Elko,
for Respondent.

BEFORE THE SUPREME COURT, PARRAGUIRRE, BELL, and STIGLICH, JJ.

*OPINION*

By the Court, STIGLICH, J.:

The termination of one's parental rights is "tantamount to imposition of a civil death penalty." *Drury v. Lang*, 105 Nev. 430, 433, 776 P.2d 843, 845 (1989). Due to its drastic nature, the termination of parental

rights is frequently viewed as a last resort, sought only when severing parental ties is the best way to protect the best interests of a child. Because termination is used as a protective measure, petitions to terminate parental rights are most often initiated by the state, which possesses an interest in protecting the welfare of children. However, a minority of states, including Nevada, allow entities or individuals that are *not* affiliated with the state to initiate termination proceedings. Nevada's statutes do not distinguish between petitions initiated by a private party, such as another parent, and petitions initiated by the state. With such a significant right at stake, we find it necessary to clarify Nevada's termination laws in this context.

Here, we highlight the distinctions between privately initiated termination petitions and those initiated by the state, and outline why these distinctions are of consequence. The motivations, considerations, and backgrounds of privately initiated termination petitions present a unique set of circumstances often not present in petitions initiated by the state. We encourage district courts to approach private petitions carefully and with a watchful eye for these distinctions. After reviewing the private termination action before us, we conclude that the district court's findings of parental fault are not supported by substantial evidence. As a result, we reverse the district court's order.

## FACTS AND PROCEDURAL HISTORY

Appellant Shianna G. and respondent Logan S. were in a relationship between 2017 and 2019.[1] In 2018, the couple had a child, R.A.S.[2] Shortly after Shianna and Logan's breakup in the fall of 2019,

---

[1]The background of this case, as relayed here, was established through the testimony of multiple parties.

[2]Shianna additionally has one child from a prior relationship.

Shianna, who struggled with substance abuse, brought R.A.S. to Logan so that he could care for R.A.S. while Shianna sought treatment at a private rehabilitation facility.

In January 2020, Shianna enrolled in and completed a 30-day treatment program. Upon completion of the program, Shianna testified that she went to Logan's home to see R.A.S. but discovered that he had moved. She attempted to call Logan but discovered that he had changed his phone number. Shianna reached out to Logan's stepmother for updated contact information, but his stepmother claimed not to have updated information. Finally, Shianna attempted to contact Logan through a Facebook account that Logan shared with his now-wife, only to discover that she had been blocked from contacting the account. Shianna relapsed shortly thereafter and was arrested and sentenced to probation in 2021. She absconded from probation and was sent to jail for several months in the spring of 2022. By the time she was released in March 2022, Shianna had not seen R.A.S. since December 2019.

Still unable to locate her son or contact his father, Shianna moved into her sister's home shortly after she was released from jail and worked as a live-in nanny for her sister's children. She had another child in the summer of 2022 with her boyfriend at the time and has cared for this child on a full-time basis since his birth. Shianna continued to work as a nanny for her sister until she began a new job as a dental assistant in August 2023.

In June 2023, Logan filed a petition to terminate Shianna's parental rights. The district court held a hearing and heard testimony from seven witnesses, including Shianna; Logan and his wife Canyen; Shianna's sister and mother; Logan W., the father of Shianna's eldest child; and Logan

SUPREME COURT
OF
NEVADA

(O) 1947A

3

W.'s wife Kristian. Logan testified that he has cared for R.A.S. since Shianna left R.A.S. with him in 2019. He testified that he changed his phone number at some point during the years prior to the termination hearing and did not make any effort to provide Shianna with updated contact information, asserting that Shianna could have filed paperwork with the court if she wanted to see R.A.S. Lastly, Logan testified that he saw Shianna's sister in Walmart several years ago and provided her with his phone number so that Shianna could see R.A.S. but that he never heard back from Shianna or her sister. Logan's wife Canyen testified that she began dating Logan several months after his split with Shianna and that the couple now has four children, including R.A.S. She stated that R.A.S. is a well-adjusted child who attends school and is bonded to his siblings. She further testified that she considers R.A.S. as one of her children, describing R.A.S. as an affectionate child who calls her "mommy."

The district court ultimately terminated Shianna's parental rights. In doing so, the court concluded that clear and convincing evidence existed to support parental fault findings of (1) abandonment, (2) neglect, (3) unfitness, and (4) token efforts and that termination was in the best interest of R.A.S. pursuant to the factors outlined in NRS 125C.0035(4). This appeal followed.

## DISCUSSION

In her appeal, Shianna challenges the district court's parental fault and best interest analyses and the admission of certain evidence and

testimony.[3] Before addressing the district court's decision to terminate, we find that a discussion on termination proceedings in general is warranted.

*State-initiated termination proceedings are different than those initiated by a private party*

The termination of parental rights in Nevada is governed by NRS Chapter 128. Both petitions initiated by the state and petitions initiated by a private party fall within the purview of NRS Chapter 128, without distinction. *See* NRS 432B.5901 (recognizing that a termination action commenced by an agency that provides child welfare services pursuant to NRS Chapter 432B falls within the purview of NRS Chapter 128). However, we find that acknowledging the differences between these types of termination petitions is necessary for several reasons.

First, termination proceedings initiated by the state occur in situations where a child is in need of protection. *See, e.g., In re Parental Rts. as to D.R.H.*, 120 Nev. 422, 433, 92 P.3d 1230, 1237 (2004) (affirming a termination of parental rights initiated by the Division of Child and Family Services where returning children to the parents would put them at substantial risk of harm); *In re Parental Rts. as to A.J.G.*, 122 Nev. 1418, 1420, 1429, 148 P.3d 759, 761, 767 (2006) (affirming a termination of parental rights where children were removed from the home by CPS following reports of abuse and drug usage); *In re Parental Rts. as to A.P.M.*, 131 Nev. 665, 673, 356 P.3d 499, 505 (2015) (affirming a termination of parental rights initiated by the Clark County Department of Family Services where young siblings were repeatedly injured and hospitalized in

---

[3]In light of our conclusion that the district court's findings of parental fault are not supported by substantial evidence, we decline to address Shianna's remaining arguments on appeal.

a parent's care due to the parent's neglect). In contrast, privately initiated termination petitions do not have the same requirement that the child be in need of protection.

Second, when a state agency is involved, parents are often provided with case plans and access to various services, with termination of parental rights being a last resort after reunification fails. *See In re Parental Rts. as to N.D.O.*, 121 Nev. 379, 381, 386, 115 P.3d 223, 224, 228 (2005) (affirming termination of parental rights after a parent failed to comply with the case plan, which included parenting classes, substance abuse and domestic violence classes, and counseling); *see also* NRS 432B.393(1) (stating that "an agency which provides child welfare services shall make reasonable efforts to preserve and reunify the family of a child"). In contrast, when a private party petitions to terminate parental rights, no such services are available.

Further, we recognize that while the child's best interest is always paramount in any type of termination proceeding, the motivations behind a privately initiated petition may differ from those behind a petition initiated by a state agency. In state-initiated proceedings, for instance, the most salient best interest factors may be whether the child is safe and well cared for, whereas in private proceedings, the child is likely safe and well cared for, and the child's best interest concerns likely involve other factors, such as having two present parents in the child's life. *See In the Matter of Parental Rts. as to S.V.*, No. 83008, 2022 WL 3335987 (Nev. Aug. 11, 2022) (Order of Affirmance) (affirming a ruling that termination was in the child's best interest where the record established that the child had thrived in the care of the custodial father and bonded with his wife, who intended to adopt him). Thus, in private proceedings where a child may be safe and well cared


(O) 1947A

for, a district court would be left to determine whether, despite this, the child's best interests would best be served by severing parental ties. We therefore instruct district courts to use caution and common sense when addressing private termination petitions due to these distinctions. With the distinctions in mind, we now turn to the district court's decision to terminate Shianna's parental rights.

*The district court's findings of parental fault are not supported by substantial evidence*

"A party petitioning to terminate parental rights must establish by clear and convincing evidence that (1) termination is in the child's best interest, and (2) parental fault exists." *In re A.J.G.*, 122 Nev. at 1423, 148 P.3d at 762; *see also* NRS 128.105(1). If substantial evidence in the record supports the district court's determination that clear and convincing evidence warrants termination, we will uphold the termination order. *In re D.R.H.*, 120 Nev. at 428, 92 P.3d at 1234. Substantial evidence is that which "a reasonable person may accept as adequate to" support a conclusion. *Ellis v. Carucci*, 123 Nev. 145, 149, 161 P.3d 239, 242 (2007).

Pursuant to NRS 128.105(1)(b), to satisfy the requirement of parental fault, the court need only find that substantial evidence supports one ground of parental fault. Here, the district court found four grounds: abandonment, neglect, unfitness, and token efforts. We address each below.

*Abandonment*

The district court concluded that Shianna abandoned R.A.S. because she had not provided for his support or communicated with him in more than six months. Shianna argues that she did not intend to abandon

R.A.S.[4] Shianna further argues that by contesting the termination petition, she demonstrates that she did not intend to forego her parental rights. Logan argues that Shianna abandoned R.A.S. because Shianna had not seen R.A.S. since 2019 and had made only minimal efforts to contact him since then. We conclude that the district court's finding of abandonment is not supported by substantial evidence.

Abandonment of a child occurs when a parent's actions demonstrate "a settled purpose . . . to forego all parental custody and relinquish all claims to the child." NRS 128.012(1). "Intent is the decisive factor in abandonment and may be shown by the facts and circumstances." *Matter of Parental Rts. as to Montgomery*, 112 Nev. 719, 727, 917 P.2d 949, 955 (1996), *superseded by statute on other grounds as stated in In re Parental Rts. as to N.J.*, 116 Nev. 790, 8 P.3d 126 (2000). A presumption of abandonment arises when a parent "leave[s] the child in the care and custody of another without provision for the child's support and without communication for a period of 6 months." NRS 128.012(2). This presumption can be rebutted by a preponderance of the evidence. *In re Parental Rts. as to L.R.S.*, 140 Nev., Adv. Op. 62, 555 P.3d 1175, 1181 (2024) (explaining that the presumption may be rebutted by a preponderance of the evidence); NRS 47.180(1) ("A presumption, other than a presumption

---

[4]Shianna also correctly asserts that a parent's incarceration by itself cannot establish parental fault. *In re Parental Rts. as to J.L.N.*, 118 Nev. 621, 628, 55 P.3d 955, 959-60 (2002) ("[W]hile a parent's incarceration must be considered in determining whether termination is proper, incarceration alone is insufficient to satisfy the statutory requirement of parental fault."). While we cannot conclusively determine from the record whether the district court factored Shianna's period of incarceration into its finding of abandonment, we nevertheless conclude that the district court's finding is not supported by substantial evidence.

SUPREME COURT
OF
NEVADA

(O) 1947A

against the accused in a criminal action, imposes on the party against whom it is directed the burden of proving that the nonexistence of the presumed fact is more probable than its existence.").

At the time of the termination hearing in 2023, Shianna had not seen R.A.S. since December 2019, when she left him with Logan. Thus, the district court properly applied the presumption that Shianna had abandoned R.A.S., as she had not seen R.A.S. for more than six months. Nevertheless, we conclude that Shianna rebutted this presumption by a preponderance of the evidence.

Logan's argument that Shianna abandoned R.A.S. because she had not seen him for several years and had made only minimal efforts to contact him is belied by the record.[5] Shianna visited Logan's home, attempted to call him and send him a message on Facebook (the only social media he possessed), and sought his contact information through his stepmother. But Logan had moved, changed his phone number, and blocked Shianna on Facebook, effectively preventing all further contact and communication. It is difficult to discern what more Shianna could have done to locate R.A.S., short of judicial intervention, which cannot be held against her.[6] *See In re L.R.S.*, 140 Nev., Adv. Op. 62, 555 P.3d at 1181 (stating that a parent's choice not to move the district court to modify custody cannot be used as support for a finding of abandonment).

---

[5]Logan also points to Shianna's lack of support. While a lack of support is a factor that district courts may consider, we have held that "[n]onsupport is not synonymous with abandonment." *Sernaker v. Ehrlich*, 86 Nev. 277, 280, 468 P.2d 5, 7 (1970).

[6]During the termination hearing, Logan's counsel noted that Shianna "never attempted to file any self[-]help paperwork." To the extent the district court weighed this against Shianna, we conclude that it erred.

SUPREME COURT
OF
NEVADA

(O) 1947A

9

Shianna's opposition to Logan's petition to terminate her parental rights further supports our conclusion that she did not intend to forego her parental rights. While "the trial court is not obligated to accord greater weight to the parent's belated protestations than to the parent's failure to provide support and communicate with the child over several years," we have held that "the mere fact that the parent contests the termination may indicate that the parent does not have a settled purpose to forego all parental custody and relinquish all claims to the child." *Greeson v. Barnes*, 111 Nev. 1198, 1204, 900 P.2d 943, 947 (1995) (internal quotation marks and ellipsis omitted), *superseded by statute on other grounds as stated in In re N.J.*, 116 Nev. at 799-800, 8 P.3d at 132.

Because conduct typifying abandonment includes "the withholding of parental presence, love, care, filial affection and support and maintenance," *Sernaker*, 86 Nev. at 280, 468 P.2d at 7, we cannot uphold a finding of abandonment where a parent did not know where their child was or how to contact them and when the parent made attempts to find their child. *See, e.g., In re Parental Rts. as to Y.V.*, Docket No. 74314, 2018 WL 3629519 (Nev. July 26, 2018) (Order of Affirmance) (upholding a finding that a parent successfully rebutted the presumption of abandonment where the other parent interfered with communication and visitation). Shianna's attempts at contact, taken together with her opposition to the termination, demonstrate that she did not evince a settled purpose to forego her parental rights. We therefore conclude that substantial evidence does not support the district court's finding that Logan proved by clear and convincing evidence that Shianna abandoned R.A.S.

*Neglect*

The district court found that R.A.S. was neglected because Shianna "failed, neglected, and refused to provide proper food, clothing, shelter, education, medical care, or other necessary care for [R.A.S.'s] physical, mental, and emotional needs." Shianna argues that leaving R.A.S. in the care of Logan does not constitute neglect. Logan argues that by leaving R.A.S. with him, Shianna failed to provide any care for R.A.S., let alone proper care, and that these actions support the district court's finding of neglect. We conclude that the district court's finding of neglect is not supported by substantial evidence.

"[A] finding of neglect must be based upon the treatment of the child while the parent has custody: neglect is not established when the child is left by the parent in an environment where the child is known to be receiving proper care." *Chapman v. Chapman*, 96 Nev. 290, 294, 607 P.2d 1141, 1144 (1980). In *Chapman*, this court determined that a finding of a mother's neglect was not supported by substantial evidence because her child had been cared for by the father and by his family members. Similarly, in this case, because R.A.S. was left in an environment where he was known to be receiving proper care, we conclude that Shianna did not neglect R.A.S. To the extent Logan urges us to consider Shianna's conduct while R.A.S. was in her care in 2019, we conclude that this conduct is too remote in time for us to consider. We therefore conclude that substantial evidence does not support the district court's finding that Logan proved by clear and convincing evidence that Shianna had neglected R.A.S.

*Unfitness*

The district court concluded that Shianna is an unfit parent, as she "failed to provide [R.A.S.] with proper care, guidance, and support" because of her "fault, habit, or conduct." Shianna argues that no evidence

supports that she is an unfit parent. She asserts that parental fitness is a forward-looking factor and that the district court relied too heavily on her past drug usage, citing the lack of any evidence of current drug usage or inability to care for R.A.S. Logan argues that Shianna's limited rehabilitative treatment program did not adequately address her substance abuse issues and that R.A.S. would not be safe in her care.

NRS 128.018 defines an unfit parent as "any parent of a child who, by reason of the parent's fault or habit or conduct toward the child or other persons, fails to provide such child with proper care, guidance and support." First, we note that while the parties primarily focus their arguments on Shianna's former substance abuse, there is no indication that the district court factored this into its analysis because it did not specify what Shianna's "fault, habit, or conduct" was. Furthermore, while we have not specifically addressed whether parental fitness looks to the past or the present, we conclude that district courts may consider both, but that a parent's prior unfitness may only be considered to the extent that it demonstrates a current, severe, and persistent inability to care for the child. *See, e.g., In re D.R.H.*, 120 Nev. at 430, 92 P.3d at 1235 (upholding a finding of unfitness based in part on a parent's past and present drug usage that consistently rendered the parent unable to care for their children).

We have previously referred to parental unfitness as "the other side of the neglect coin" and have explained that "[a] neglected child is one who does not receive '*proper*' care; an unfit parent is one who fails to provide a child with '*proper*' care." *Champagne v. Welfare Div.*, 100 Nev. 640, 648, 691 P.2d 849, 855 (1984), *superseded by statute on other grounds as stated in In re N.J.*, 116 Nev. at 799-800, 8 P.3d at 132. Thus, as is the case with the district court's neglect finding, we cannot conclude that Shianna failed

to provide R.A.S. with proper care, guidance, and support when he was safe and cared for by Logan. We therefore conclude that substantial evidence does not support the district court's finding that Logan proved by clear and convincing evidence that Shianna is an unfit parent.

*Token efforts*

Lastly, the district court concluded that Shianna "has made only token efforts to care for the child." Shianna argues that her efforts exceeded mere token efforts. She argues that Logan intentionally thwarted her efforts to reunite with R.A.S. by changing his phone number, moving multiple times, and blocking her on social media. Logan denies intentionally keeping Shianna away from R.A.S. and argues that Shianna's lack of effort to contact him and R.A.S. constitutes only token efforts. Logan further argues that token efforts are used to bolster a finding of abandonment and are not a standalone basis to termination in the private context. We conclude that the district court's finding of token efforts is not supported by substantial evidence.

Parental fault may be based on token efforts to "support or communicate with the child," "prevent neglect of the child," "avoid being an unfit parent," or "eliminate the risk of serious physical, mental or emotional injury to the child." NRS 128.105(1)(b)(6). At the outset, we note that the district court did not specify which provision(s) of this parental fault ground it based its finding upon, which makes our review difficult.[7] A review of the record reveals that the district court was likely referring to token efforts to "support or communicate with the child" because R.A.S. was in a safe

---

[7]We note that review of each parental fault ground has been difficult due to the sparsity of the district court order terminating Shianna's parental rights.

SUPREME COURT
OF
NEVADA

(O) 1947A

environment, but we are not comfortable employing guesswork when such a significant right is at stake. Regardless, we conclude that the district court's finding of this parental fault ground is not supported by substantial evidence.

Shianna was unable to contact Logan because he had changed his phone number, moved to a new house, and blocked her on Facebook. Again, we find it troubling to conclude that a parent made only "token efforts" to support or communicate with their child when they were effectively unable to locate that child. We therefore conclude that substantial evidence does not support the district court's finding that Logan proved by clear and convincing evidence that Shianna made only token efforts.

Because at least one ground of parental fault is needed to uphold a termination order and none of the district court's parental fault findings is supported by substantial evidence, we need not address whether termination was in R.A.S.'s best interest. Thus, we reverse the district court order terminating Shianna's parental rights.

## CONCLUSION

Whether to terminate parental rights is a serious decision that should be made with the utmost care. Termination petitions initiated by a private party present unique challenges and considerations that differ from those arising from petitions initiated by the state. Accordingly, we instruct district courts to consider such questions and to carefully review the motivations and circumstances surrounding private termination petitions. Having reviewed the private termination action before us, we conclude that the district court's findings of parental fault are not supported by

substantial evidence and thus do not warrant the termination of Shianna's parental rights. Accordingly, we reverse the district court's termination order.

_____, J.
Stiglich

We concur:

_____, J.
Parraguirre

_____, J.
Bell